# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| WILMA L. JOHNSON, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> AIR LIQUIDE LARGE INDUSTRIES § <br> U.S. L.P., § <br> § <br> *Defendant*. § | Case No. 2:18-CV-259-WCB |

## MEMORANDUM OPINION AND ORDER

Before the Court are <u>Plaintiff's Motion to Compel Discovery Responses</u>, Dkt. No. 53, and <u>Defendant Air Liquide Large Industries U.S. L.P.'s Motion for Protection</u>, Dkt. No. 61. The defendant's motion for protection is in substance a surreply brief in response to the plaintiff's motion to compel discovery responses and will be treated as such. Accordingly, the defendant's motion for protection is DENIED. The plaintiff's motion to compel discovery responses is GRANTED IN PART and DENIED IN PART.

The plaintiff, Wilma L. Johnson, initially sought to compel responses to a number of discovery requests. In the course of the briefing on the motion to compel, the dispute was narrowed to four documents that were listed on the privilege log prepared by defendant Air Liquide Large Industries U.S. L.P. ("Air Liquide"). Those documents, identified on Air Liquide's privilege log as PRIV011, PRIV012, PRIV013, and PRIV015, consist of communications among various Air Liquide employees, including the Assistant General Counsel for the company. Air Liquide argues that the work-product doctrine and attorney-client privilege protect all four documents.

1

## BACKGROUND

This is, quite literally, a "slip and fall" case. The complaint alleges that Ms. Johnson was employed as an outside sales representative for a company engaged in the sales and servicing of scales. On February 22, 2018, Ms. Johnson was on the premises of an Air Liquide plant, pursuant to an appointment. The purpose of her visit to the plant was to deliver sales brochures. When she arrived at the plant, she was instructed to walk up a paved walkway toward the control room. As she walked along the walkway, she slipped, fell, and fractured her right knee. Ms. Johnson subsequently retained counsel, and on March 19, 2018, Air Liquide received correspondence from her counsel identifying themselves as her legal representatives.

Ms. Johnson filed this action in June 2018, asserting federal jurisdiction based on diversity of citizenship. At the close of discovery, she filed a motion to compel the production of various documents, including the four documents that are at issue in this motion. Air Liquide filed a response to the motion, which was followed by a reply from Ms. Johnson and a "Motion for Protection" by Air Liquide, which the Court has treated as a surreply brief. The Court held a telephonic hearing on September 4, 2019, and has since obtained and reviewed the subject documents *in camera*.

The four documents that are in dispute are described as follows in Air Liquide's privilege log:

(1) a communication dated February 22, 2018, from Robert Harrison, identified as the "VP HSEQ" for Air Liquide, to three individuals: Kyle Harris, the Assistant General Counsel for Air Liquide; Roland Simons, the Health, Safety and Environmental Manager for Air Liquide; and Angela O'Quinn, who was at the time a Senior Health, Safety, and Environment Specialist for Air Liquide. Dkt. No. 58-1, at 2 ("PRIV011").

(2) a communication dated March 5, 2018, from Hank Jeffcoats, a Production Manager for Air Liquide, to Mr. Harris. Dkt. No. 58-1, at 2 ("PRIV012").

(3) a communication dated March 19, 2018, from Mr. Jeffcoats to four individuals: Mr. Harris; Mr. Harrison; James Stonecipher, an Operations Director for Air Liquide; and Robert Torres, a Plant Manager for Air Liquide. Dkt. No. 58-1, at 2 ("PRIV013").

(4) an "incident notification" sent on February 22, 2018, from Ms. O'Quinn to Mr. Simons. Dkt. No. 58-1, at 2 ("PRIV015").

## DISCUSSION

**1. The Applicable Law**

Rule 501 of the Federal Rules of Evidence provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." In this civil case, in which the Court's jurisdiction is invoked based on diversity of citizenship, Texas state law supplies the rule of decision for the claims and defenses raised by the parties. For that reason, Texas law governs Air Liquide's claim to the protection of the attorney-client privilege in this matter.

Air Liquide's invocation of the work-product doctrine stands differently. The work-product doctrine is not, strictly speaking, a privilege, but instead is a qualified immunity from discovery. *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 n.2 (5th Cir. 1993); *In re Naranjo*, 768 F.3d 332, 345 n.16 (4th Cir. 2014); *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997); *Admiral Ins. Co. v. U. S. Dist. Court for the Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989). For that reason, Rule 501 does not apply to claims for protection from discovery under the work-product doctrine. *United States v. Airy*, 518 F.3d 775, 782 n.4 (10th Cir. 2008); *Anderson v. SeaWorld Parks & Entm't, Inc.*, 329 F.R.D. 628, 635 (N.D. Cal. 2019); *Aerojet Rocketdyne, Inc.*

*v. Global Aerospace, Inc.*, No. 2:17-cv-1515, 2018 WL 4154686, at *4 (E.D. Cal. Aug. 30, 2018); *Melhelm v. Meijer, Inc.*, 206 F.R.D. 609, 614–15 (S.D. Ohio 2002); *In re Combustion, Inc.*, 161 F.R.D. 51, 52 (W.D. La. 1995) (citing numerous cases). Instead, as in the case of other procedural rules, federal law applies to define the scope of the work-product doctrine in this diversity case. *See Hanna v. Plumer*, 380 U.S. 460 (1965); *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941). Specifically, the federal work-product rule, which is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, governs the application of the work-product doctrine here. *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991); *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009); *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053–54 (8th Cir. 2000); *Frontier Ref. Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988); *Shaw v. Zurich Am. Ins. Co.*, No. 2:12-cv-797, 2014 WL 2891904, at *1 (E.D. Tex. June 26, 2014). The parties' focus on Texas state law is therefore appropriate with respect to the scope of the attorney-client privilege, but not with respect to the scope of the work-product doctrine.

### 2. Work-Product Doctrine

Rule 26(b)(3) provides in pertinent part:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representatives (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

The Fifth Circuit has construed Rule 26(b)(3) to protect documents from disclosure when the documents were prepared by or for employees of a party if the documents are found to have

been created primarily because of the prospect of litigation, rather than in the ordinary course of business. *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982); *United States v. Davis*, 636 F.3d 1028, 1040 (5th Cir. Unit A 1981); *Elec. Data Sys. Corp. v. Steingraber*, No. 4:02-cv-225, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003) ("If the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation.").

In order for the work-product doctrine to apply, it is not necessary for particular litigation to have commenced. *See* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2024, at 498–502 (3d ed. 2010). The doctrine can apply where litigation is not imminent, "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000). The Court therefore rejects Ms. Johnson's argument that the work-product doctrine has no applicability to any conduct by Air Liquide employees that occurred before March 19, 2018, the date that Air Liquide received a letter of representation from Ms. Johnson's counsel. Rather than creating a rigid rule as to when the work-product doctrine becomes applicable, the cases applying Rule 26(b)(3) have sought to distinguish between documents created in the ordinary course of business and documents created primarily because of the prospect of litigation. *See* 8 *Federal Practice & Procedure* § 2024, at 500–02 ("Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.").

The Fifth Circuit has acknowledged that it is "admittedly difficult to reduce to a neat formula the relationship between the preparation of a document and possible litigation necessary

5

to trigger the protection of the work product doctrine." *Davis*, 636 F.2d at 1039. However, the focus of the inquiry must remain on whether the "primary motivating purpose" for the creation of the document was for use in connection with possible litigation. *Id.* The party who asserts work-product protection bears the burden of showing that the materials at issue are entitled to that protection. *Hodges, Grant & Kaufman v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985).

In support of her argument that the documents at issue were prepared in the ordinary course of business, Ms. Johnson points to deposition testimony from Mr. Jeffcoats regarding the documents he prepared regarding the incident (PRIV012 and PRIV013). In the portions of his testimony highlighted by Ms. Johnson, Mr. Jeffcoats admitted that when Air Liquide received a letter from Ms. Johnson's counsel on March 19, 2018, that was the first time he was "aware or anticipated any litigation in this matter." Dkt. No. 60, at 9. Mr. Jeffcoats was then asked whether, prior to that time, "all of this was ordinary course of business . . . [i]ncluding the things that you had turned in to legal and to management at Air Liquide, correct?" He answered, "Yes." *Id.* at 9-10. When asked whether, prior to receiving a communication from Ms. Johnson's counsel, "everything that was done was in the ordinary course of business, that you do record incidents regardless of whether or not there's going to be a lawsuit," Mr. Jeffcoats again answered in the affirmative. He was then asked, "If it's an injury to an employee or anything else, if there's a safety event, you record it?" He responded, "We record all kinds of stuff, yes." Dkt. No. 61-1, Exh. 1, at 84. He was then asked, "in the ordinary course of business, you record all of the stuff that you recorded in your report, regardless of whether or not there's going to be a lawsuit, correct, or regardless of whether or not anybody says they're going to file a lawsuit?" He answered, "I would go ahead and record that." *Id.* at 85.

Basing its argument on Texas law, Air Liquide responds that the evidence it has proffered shows that (1) at the time the documents in dispute were created, there was a substantial chance that litigation would ensue, and (2) the documents were created for the purpose of preparing for such litigation. Air Liquide offered the following evidence in support of its argument:

First, Air Liquide points to portions of Mr. Jeffcoats' deposition testimony other than the portions on which Ms. Johnson relies. Although Mr. Jeffcoats answered "yes" to the question whether his reporting the incident with Ms. Johnson was in the "ordinary course of business," Dkt. No. 60, Exh. A, at 51, he also testified that, based on his training and experience, when he encountered an injury such as Ms. Johnson's "we take care of the injury and then . . . the best thing to do is write down the events, just to record them because, you know, your memory fails over time. In case there was a possibility of a litigation, you've already got everything recorded." Dkt. No. 61-1, Exh. 1, at 82–83. Mr. Jeffcoats added that the reason he wrote up the incident involving Ms. Johnson was "to record the actual data just in case there was litigation in the future." *Id.*, Exh. 1, at 83. In the case of injury on a worksite, Mr. Jeffcoats testified, he would make a record of the incident "regardless of whether or not there's going to be a lawsuit," because "we're better to go ahead – and record the incident from a litigation purpose than to – worry about it after the fact." *Id.*, Exh. 1, at 85. Mr. Jeffcoats' counsel asked him whether he made a record of injuries at the plant "in the ordinary course of business because that's how you're trained, correct?" He responded, "Yes, but trained from – in case there was a litigation, that's primarily the reason we do it." *Id.*, Exh. 1, at 85–86.[1]

---

[1] At one point during the deposition, Air Liquide's counsel asked Mr. Jeffcoats, "And based off your industry training and experience, including that prior case you were involved with, were you thinking that litigation might – might come out of this when you saw Ms. Johnson on the ground?" Dkt. No. 61-1, Exh. 1, at 83. Mr. Jeffcoats responded, "There was a possibility,

7

Second, Air Liquide introduced a declaration from Mr. Harris, the Assistant General Counsel for Air Liquide. Mr. Harris stated that Air Liquide "anticipated litigation immediately upon becoming aware of the plaintiff's fall and resulting injury in this case." He added: "In my experience as counsel for Air Liquide, such incidents regularly give rise to litigation and may also give rise to adverse actions by regulatory agencies such as OSHA." Dkt. 61-2, Exh. 2.

Third, Air Liquide introduced a declaration from Mr. Simons, who was listed as a recipient of the documents designated as PRIV011 and PRIV015. Mr. Simons stated that upon hearing about the incident on February 22, 2018, he directed Ms. O'Quinn to "gather the relevant facts." She did so and drafted the incident notification designated as PRIV015. Mr. Simons stated that as soon as he heard about the incident, "I believed there to be a substantial chance of litigation related to it. My communications with Ms. O'Quinn and others, as reflected on the above-mentioned privilege log, were made to facilitate the rendition of professional legal services to Air Liquide." Dkt. No. 61-4, Exh. 3. He added that "[i]n my experience in the safety field, incidents such as the plaintiff's fall in this case and the resulting injuries often give rise to litigation." *Id.*

Fourth, Air Liquide introduced a declaration from Ms. O'Quinn, who stated that she drafted the incident notification (PRIV015), and that drafting such incident notifications "was a part of my responsibilities as a safety specialist for Air Liquide." Dkt. No. 61-5, Exh. 4. She added that she "understood the potential for litigation and regulatory action resulting from it," and that "[i]n my experience, such actions are common following injuries such as the one in this case."

Based on the evidence before it, the Court makes the following findings with respect to the four documents at issue:

---

yes." *Id.* That question, objected to by Mr. Johnson's counsel as leading, was plainly objectionable, and the Court has therefore disregarded that question and answer.

One of the documents, PRIV013, was prepared by Mr. Jeffcoats on March 19, 2018, after Air Liquide learned that Ms. Johnson had retained counsel. That much is apparent from the date of the document and a review of its contents. To be sure, there is very little to the document. Nonetheless, because it was a communication with Air Liquide's counsel made after the prospect of litigation had become expressly manifest, and because it was made in furtherance of Air Liquide's preparation for that litigation, the Court finds that the document was prepared in anticipation of litigation and is therefore covered by the work-product doctrine.

A second document, PRIV011, is an email from Mr. Harrison to Mr. Simons, with a copy to Air Liquide's Assistant General Counsel. The email was dated February 22, 2018, the day of the incident. Mr. Harrison did not submit a declaration, and Mr. Simons' declaration did not address that email specifically. However, Mr. Simons' declaration stated that his communications relating to the incident "were made to facilitate the rendition of professional legal services to Air Liquide," because as soon as he heard about the incident, he believed "there to be a substantial chance of litigation related to it." Dkt. No. 61-1, Exh. 3. While it was Mr. Simons, not Mr. Harrison (the sender of the email) who provided testimony as to his belief that there was a substantial chance that the incident would give rise to litigation, that circumstance is not fatal to Air Liquide's claim of work-product protection. That is particularly true in light of the fact that it was Mr. Simons who initiated the email contact with Mr. Harrison, and thus Mr. Simons' motivation is important in determining whether the document was prepared primarily because of the prospect of litigation.

Although the document contains little content, it can reasonably be viewed as reflecting plans by the Air Liquide executives, including Air Liquide's inside counsel, to preserve evidence relating to the incident. The nature of the proposed measures for preserving evidence strongly

9

suggest an awareness of the likelihood of litigation and an intention to take steps in anticipation of that litigation. In light of the contents of the document and the fact that the company's counsel was copied on the document, the Court finds that the document designated as PRIV011 was prepared in anticipation of litigation and is therefore protected from discovery by the work-product doctrine.

A third document, PRIV012, was sent by Mr. Jeffcoats to Mr. Harris, Air Liquide's Assistant General Counsel, on March 5, 2018. Once again, the document contains little of substance. From the context, however, it is clear that it was part of an effort to collect information about the incident and to advise Mr. Harris concerning the ongoing investigation of the matter. Mr. Harris asserted in his statement that Air Liquide "anticipated litigation immediately upon becoming aware of the plaintiff's fall and resulting injury in this case," and that in his experience, "such incidents regularly give rise to litigation." Dkt. No. 61-2, Exh. 2. Based on the circumstances in which the document was prepared, and in light of Mr. Harris's declaration and the deposition testimony of Mr. Jeffcoats, the Court finds that the communication in question was not a routine communication made in the ordinary course of business, but was specifically directed to the investigation of an incident that was understood to be likely to lead to litigation. The Court finds that PRIV012 was created as part of an effort to prepare for litigation and because of the prospect of litigation. It is therefore protected by the work-product doctrine.

The fourth document, PRIV015, is a brief report, which is identified in the privilege log as an "incident notification" prepared by Ms. O'Quinn. The privilege log identifies it as having been created on February 22, 2018, the day of the incident. According to the privilege log, that document was sent only to Mr. Simons. In his declaration, Mr. Simons stated that he directed Ms. O'Quinn to "gather the relevant facts" and that she did so. He added that his communications

"with Ms. O'Quinn and others were made to facilitate the rendition of professional legal services to Air Liquide," and that in his experience incidents such as Ms. Johnson's fall "often give rise to litigation." Dkt. No. 61-4, Exh. 3.

The claim of work-product protection for this document is significantly weaker than for the other three. Ms. O'Quinn's declaration states that the practice of drafting incident notifications such as the one she drafted regarding Ms. Johnson's injury was "a part of my responsibilities as a safety specialist for Air Liquide." Dkt. No. 61-5, Exh. 4. She added that she "understood the potential for litigation" resulting from the incident and that in her experience, "such actions are common following injuries such as the one in this case."

What is missing from the evidence regarding PRIV015 is a clear connection between the fact that Ms. O'Quinn prepared an incident notification, which her declaration suggests was a regular part of her responsibilities as a safety specialist, and Air Liquide's argument that the primary motivation for the preparation of the incident notification was to assist in the conduct of future litigation. Her statement that she understood the potential for litigation from incidents such as the one involving Ms. Johnson falls short of showing that the purpose for preparing the incident notification was to prepare for a likely lawsuit.

While Mr. Simons asserted in his statement that his communications with Ms. O'Quinn and others "were made to facilitate the rendition of legal services to Air Liquide," Dkt. No. 61-4, Exh. 3, that statement is too broad and unspecific to provide significant support for Air Liquide's position with respect to PRIV015. The overall thrust of Mr. Simons' activities may have been motivated, at least in part, to protect Air Liquide's legal interests, but that does not establish that Ms. O'Quinn's incident report was prepared primarily because of the prospect of litigation. As Judge Davis pointed out in a similar setting, a short, conclusory, after-the-fact affidavit from a

party's employee cannot be sufficient to support a finding that preparation for litigation was a "primary motivating purpose" for creating a particular document, because if it were, "any party could protect any document by submitting an after-the-fact declaration from one of its employees stating that the work was done in anticipation of litigation. This cannot be the correct legal result." *Secure Access, LLC v. Bank of Am. Corp.*, Case No. 6:10-cv-670, 2013 WL 12152470, at *3 (E.D. Tex. Mar. 14, 2013).

Courts have frequently been faced with the question whether incident reports such as Ms. O'Quinn's report constitute protectable work product. In making that determination, courts have considered various factors, such as whether the document was prepared in the ordinary course of an employee's work; whether the document would have been created regardless of the litigation; whether there was a business reason, other than the prospect of litigation, for preparing the document; whether the opposing party made any statements or took any steps prior to the preparation of the document suggesting the likelihood of litigation; and whether the document was created at the behest or with the knowledge of counsel. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) ("'[T]he fact that a defendant anticipates the contingency of litigation resulting from an accident or an event does not automatically qualify an "in house" report as work product.' . . . The document must be prepared *because of* the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or serious of events that reasonably could result in litigation." . . . Following any industrial accident, it can be expected that designated personnel will conduct investigations, not only out of a concern for future litigation, but also to prevent reoccurrences, to improve safety and efficiency in the factory and to respond to regulatory obligations. Determining the driving force behind the preparation of each requested document is therefore required in

resolving a work product immunity question."); *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983) ("A more or less routine investigation of a possibly resist[i]ble claim is not sufficient to immunize an investigative report developed in the ordinary course of business.") (quoting *Janicker by Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982); *Fenner Investments Ltd. v. Juniper Network, Inc.*, Case No. 2:05-cv-5, 2006 WL 8440695, at *1 (E.D. Tex. Sept. 9, 2006) ("[I]f the document would have been created without regard to whether litigation was expected to ensue, it is deemed to have been made in the ordinary course of business and not in anticipation of litigation"); *Elec. Data Sys.*, 2003 WL 21653414, at *4–5 ("Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. . . . If the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation."); *In re Advanced Pain Ctrs. Poplar Bluff v. Ware*, 11 F. Supp. 3d 967, 975 (E.D. Mo. 2014) ("Petitioners have not satisfied their burden to show that the documents were prepared by, or at the behest of, an attorney and in reasonable anticipation of litigation."); *Love v. Sears, Roebuck & Co.*, Civil Action No. 3:13-cv-402, 2014 WL 1092270, at *2 (W.D. Ky. Mar. 14, 2014) ("There is no dispute that the plaintiff did not threaten to sue or mention litigation."); *Fisher v. Kohl's Dep't Stores, Inc.*, No. 2:11-cv-3396, 2012 WL 2377200, at *6 (E.D. Cal. June 22, 2012) ("Here, defendant failed to show that the incident reports at issue were prepared at the specific direction of counsel in anticipation of litigation rather than pursuant to a general protocol or course of business established by defendant."); *Nelson v. Intercontinental Hotels Grp. Operating Corp.*, No. 12 cv 8485, 2013

WL 5890612, at *2 (N.D. Ill. Nov. 1, 2013) (requiring production of incident reports that "were completed in the ordinary course of business, per corporate policy, which may have the incidental effect of being helpful in the event of future litigation"); *Mims v. Dallas County*, 230 F.R.D. 479, 483 (N.D. Tex. 2005) ("Among the factors relevant to determining the primary motivation for creating a document are 'the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepared that type of document . . . .'"); *Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 512–13 (D.N.H. 1996) ("[M]aterials assembled in the ordinary course of business . . . are not protected under Rule 26(b)(3). . . . This is true even if the party is aware that the document may also be useful in the event of litigation. . . . An affidavit from counsel indicating that such work was done at his direction in anticipation of specified litigation will also help a party meet its burden under Rule 26(b)(3) of establishing that the work was done in anticipation of litigation.") (citations and quotation marks omitted); *Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993) ("[I]f a party prepares a document in the ordinary course of business, it will not be protected even if the party is aware that the document may also be useful in the event of litigation.") (quoting *Martin v. Valley Nat'l Bank*, 140 F.R.D. 291, 304 (S.D.N.Y. 1991)); *see generally United States v. Textron Inc.*, 577 F.3d 21, 29 (1st Cir. 2009) (en banc) ("It is not enough to trigger work product protection that the *subject matter* of a document relates to a subject that might conceivably be litigated. Rather, as the Supreme Court has explained, 'the literal language of [Rule 26(b)(3)] protects materials *prepared for* any litigation as long as they were prepared by or for a party to the subsequent litigation.'") (citing *FTC v. Grolier Inc.*, 462 U.S. 19, 25 (1983)).

In this case, mindful of the fact that Air Liquide has the burden to demonstrate its entitlement to work-product protection, the Court regards it as significant that Ms. O'Quinn stated

that preparing an incident notification was part of her responsibilities as a safety specialist, that the report was prepared without any indication of the involvement of counsel, and that the contents of the report appear to be largely directed to forward-looking safety concerns rather than potential issues of past liability. The Court therefore finds that, with respect to the document described as PRIV015, Air Liquide has not met its burden to show that the document is protected from discovery by the work-product doctrine.

In sum, the Court concludes that three of the documents at issue (PRIV011, PRIV012, and PRIV013) fall within the definition of work product under Fed. R. Civ. P. 26(b)(3) as documents "prepared in anticipation of litigation or for trial by or for another party or its representatives," but the fourth document (PRIV015) does not.

To be sure, the protection afforded by the work-product doctrine is qualified, not absolute. Materials that qualify as work product under Rule 26(b)(3)(A) may be discovered if they are otherwise discoverable under Rule 26(b)(4) and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). In this case, however, the Court finds that the standard set forth in Rule 26(b)(3)(A)(ii) has not been satisfied. The Court has examined the three work product documents *in camera* and has concluded that they would be of very little use to the plaintiff, as they do not contain admissions or substantive accounts of the incident that the plaintiff might be able to use affirmatively at trial or that could be used to impeach any of the defendant's witnesses. In fact, the three documents in question are so lacking in substance that the Court is puzzled as to why Air Liquide bothered to resist their production (other than possible concerns over waiver). In any event, the contents of the three documents are not such that the plaintiff "has substantial need of the materials to prepare its case." There is therefore no reason to

override the defendant's assertion of the work-product doctrine with respect to the three protected documents.

### 3. Attorney-Client Privilege

Because the Court has concluded that the work-product doctrine applies to three of the four disputed documents in this case, the Court need not address Air Liquide's alternative ground for asserting protection as to those documents—the attorney-client privilege. With respect to the fourth document (PRIV015), the Court finds that the document is not protected by the attorney-client privilege as defined by Texas law. *See* Tex. R. Evid. 503. In particular, the document does not constitute a communication between a client or the client's representative and the client's lawyer or the lawyer's representative. Tex. R. Evid. 503(b)(1). No attorney was involved in the creation of the document, and the evidence does not show that the document was created at the direction of an attorney or that it constituted a communication to an attorney, even though it was, of course, ultimately brought to the attention of Air Liquide's counsel.

Air Liquide appears to be arguing that PRIV015 is a protected attorney-client client communication because it was made or received by an "Air Liquide representative[] within the meaning of Texas' attorney-client privilege rule." Dkt. No. 61, at 8. That argument goes nowhere. As relevant here, the attorney-client privilege under Texas law applies to confidential communications "between the client or the client's representative and the client's lawyer or the lawyer's representative." Tex. R. Evid. 501(b)(1)(A). Air Liquide points out that the communication at issue here was made by an Air Liquide representative, which is undisputed. The problem is that that there is no evidence that the communication was made to "the client's lawyer or the lawyer's representative." Indeed, with respect to PRIV015, Air Liquide makes no representation to the contrary.

## CONCLUSION

Accordingly, for the reasons set forth above, the motion to compel is GRANTED IN PART and DENIED IN PART. Air Liquide is directed to produce the document identified as PRIV015 to Ms. Johnson's counsel forthwith.

IT IS SO ORDERED.

SIGNED this 9th day of September, 2019.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE